estate is liable for moneys advanced for the necessaries of life. Atchison v. Bruff, 50 Barb. 381; Smith v. Oliphant, 2 Sandf. 306; Randall v. Sweet, 1 Denio, 460.    This infant had no personal estate, and no income from real estate, and the order made in the proceedings under which her real estate was sold indicates that the application for such sale was made on the ground that the infant was in absolute need of the proceeds for her support and maintenance.    The claim for back support of this infant by her guardian, John Strohlein, before the sale of the real estate, should have been taken into consideration in determining what allowance should have been made him if he did not intend to donate to her the cost of the living provided by him.    Hyland v. Baxter, 98 N. Y. 610 (see page 615); In re Bostwick, 4 Johns. Ch. 100–105; Shepard v. Stebbins, 17 N. Y. St. Rep. 900.    In Hyland v. Baxter the court says:

"It is not necessary, at the present time, to consider the rules which govern courts of equity in exercising this jurisdiction, but the general principle has been applied in many cases that an allowance for past maintenance of infants may be made to executors, trustees, or guardians upon an accounting or upon petition, even when it requires breaking in upon the capital, provided the expenditures for which reimbursement is sought would have been authorized by the court if application had been made in advance."

In that case the administrator of their father, without any order of court, advanced moneys to the mother (of infants) for their support, she being their natural guardian, they having no general guardian at the time; and the court credited the administrator with these advances 10 years afterwards.    In Re Bostwick, 4 Johns. Ch. 105, the chancellor expressly declares that a parent may be allowed, out of the capital of the infant, for the past maintenance of such infant.    The judgment and order are reversed, and new trial ordered, with costs to abide the event.

(10 Misc. Rep. 541.)

YOUNG v. ATLANTIC AVE. R. CO.

(City Court of Brooklyn, General Term.  December 24, 1894.)

STREET RAILROADS—INJURY TO CHILD ON TRACK.

    A child 7½ years old is not, as a matter of law, negligent in attempting to cross in front of an electric street car approaching a street crossing, as it is the duty of the motorman, on approaching crossings, to have his car under control.

Appeal from trial term.

Action by Robert Young, administrator, against the Atlantic Avenue Railroad Company, to recover damages for the death of plaintiff's intestate.    There was a judgment in favor of defendant, and plaintiff appeals.    Reversed.

Argued before CLEMENT, C. J., and OSBORNE, J.

Tredwell & Catlin, for appellant.

Bergen & Dykman, for respondent.

CLEMENT, C. J.    The plaintiff's intestate, a boy, was at the time of his death of the age of 7½ years, and, if sui juris, could only be held to the degree of care required of one of his age of ordinary

prudence. The testimony in the case is not very satisfactory, though certain facts were proven. One Griessman was at the time in the doorway of his place of business, at the northeast corner of Duffield and Concord streets, looking out towards the west side of Duffield street, and saw the boy when he was between the two tracks on Concord street, at or near the west cross walk. The boy was running at the time as if he started from the northwest corner, and went directly across the street, though Mr. Griessman did not see him until he had crossed one track. The boy ran in front of the approaching car, and was nearer the southerly rail when he was struck; that is to say, he was nearly over the track at that time. The car, after it struck him, ran 102 feet, and when it was stopped he was taken out lifeless from under the car. The grade on Concord street, from west to east, is very steep, and the cars had been only operated with electricity for three days before the day in question.

It is very evident from the testimony that the car, at the time it struck the deceased, was operated at a high and unsafe rate of speed. It may be assumed that the motorman saw the boy, and did all that he could to stop the car, and yet it moved 102 feet, carrying along his remains. We think that we can take judicial knowledge of the fact that a trolley car which is operated at an ordinary safe rate of speed can be stopped, emergency or no emergency, in a much shorter space than the distance above stated. There is direct testimony also in the case that the car was moving very rapidly. The negligence of the motorman was sufficiently proven to entitle the plaintiff to go to the jury. A motorman approaching a cross walk or a cross street should have his car under control for two reasons: Firstly. Foot passengers are liable to use the cross walk; and, though the railroad company has the paramount right of way, yet it behooves the motorman to be vigilant in approaching a cross walk, that he may avoid injury to a foot traveler, though the latter may be careless and take his chances. Murphy v. Orr, 96 N. Y. 14. Secondly. Vehicles using streets which cross a street railway have an equal right of way with the railroad cars. Buhrens v. Railroad Co., 53 Hun, 571, 6 N. Y. Supp. 224, affirmed (Ct. App.) 125 N. Y. 702, 26 N. E. 752; O'Neil v. Railroad Co., 129 N. Y. 125, 29 N. E. 84. And foot passengers using the cross walks at such cross streets have a right to assume that the motormen will slow down their cars as they approach the cross streets to avoid collisions with vehicles. Trolley cars, in crossing tracks of other lines, come nearly to a stop, and do not cross till the signal is given by the conductor. So, at such crossings, foot travelers using the cross walks have a right to assume that all cars will nearly stop, and we know of no reason why a foot traveler would be negligent at a crossing of a street not occupied by a railroad, if he assumed that a motorman would comply with the law, and would slow down his car before crossing the street, when otherwise there would be liability of collision with vehicles which have a right of way equal to that of the cars.

We do not think that the deceased was negligent, as matter of law, in running in front of the car. If it had been operated at a

reasonably safe rate of speed, he would have crossed in safety.  Is it negligent for a child $7\frac{1}{2}$ years of age to run across a street-railroad track, when he can cross in safety if the approaching car is operated at a fair rate of speed?  This child did not have the discretion of an adult, and the trolley cars had been operated for three days only in that street.  The question of contributory negligence should have been submitted to the jury under the usual instructions given in a case where the injured party is a child of the same age as the deceased.  Stone v. Railroad Co., 115 N. Y. 104, 21 N. E. 712.  The plaintiff, with the meager testimony offered, and which we assume was all that could be obtained, made out a prima facie case against the company, and the judgment appealed from must be reversed, and a new trial granted; costs to abide the event.